UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY DONELSON,

   Petitioner,

 v.

KIM BUTLER, Warden,

   Respondent.

No. 12 CV 3029

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Anthony Donelson is serving a 45-year sentence in state custody for the murder of his neighbor, Maynard Speed. He now petitions for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. As discussed below, Donelson's claims were either (1) procedurally defaulted or (2) resolved by the state courts through a reasonable application of federal law, and Donelson does not fall within any narrow exception permitting federal habeas review under these circumstances. The petition is denied, and I decline to issue a certificate of appealability.

**I. Background**

Speed was murdered in November 1999, and the police arrested Donelson in May 2000. After an evidentiary hearing, the state trial court denied Donelson's pretrial motion to suppress his statements (including a videotaped statement). [16-16] at 99–117.[1] The judge found that Donelson's suppression hearing testimony was

---

[1] Citations to the record are designated by the document number on the district court docket, placed in brackets. The cited page numbers are from the CM/ECF header placed at the top of electronically filed documents.

not credible, that he was given his Miranda rights, and that he voluntarily made the statements at issue. *Id*. Donelson's jury trial was held in 2006.[2] After two hours of deliberation, the jurors announced that they were divided 6-6. [16-18] at 344–45. They continued deliberating, reviewed the videotaped statement, requested certain transcripts of trial testimony, and found Donelson guilty of first-degree murder on the second day of deliberations. *See* [16-14] at 93–98; [16-14] at 131; [16-18] at 360.

### A.   Federal Habeas Standards

Donelson unsuccessfully appealed his conviction through the state courts, and his state post-conviction petition was also denied. [16-1]; [16-6]; [16-14] at 200; [16-11]; [16-13]. Federal review of these state-court decisions is limited.[3] With respect to a state court's determination of an issue on the merits, habeas relief can be granted only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 783–84 (2011). Federal courts must presume that the facts related by the last state court to pass on the merits are correct, subject to clear and convincing evidence rebutting that presumption. *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012).

---

[2] Prior to jury selection, the State withdrew its notice of intent to seek the death penalty. [16-16] at 157.

[3] The respondent does not dispute that Donelson has pursued all available state court remedies and that his § 2254 petition is timely. [15] ¶ 10.

2

"[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If a petitioner asserts a claim for relief that he did not present in the first instance to the state courts, the claim is procedurally defaulted and "federal courts may not address those claims unless the petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice if the claims are ignored." *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010).

**B.    Facts**

On November 9, 1999, Speed was stabbed multiple times and beaten in his apartment. [16-1] at 1–2 (*People v. Donelson*, No. 1-06-1380 (Ill.App. 1st Dist. Aug. 8, 2008) (affirming conviction on direct appeal)). The apartment building was a Chicago Housing Authority building for the elderly and disabled, and Donelson was Speed's neighbor. *Id.* at 2.[4] Donelson was a member of the building's "tenant patrol" and patrolled the hallways providing extra security. *Id.* at 17.

The evidence at trial included Donelson's videotaped statement admitting to the crime. *Id.* at 2. At trial, Donelson testified that his confession was coerced. *Id.* at 3; *see also* [16-18] at 27–135 (petitioner's trial testimony). According to Donelson, he confessed only after a police officer beat him, slammed him into a wall, and kicked him in the groin. [16-1] at 3. Donelson's blood-stained underwear (worn at the time

---

[4] Speed was 67 years-old at the time of the murder. [16-17] at 25. Donelson was living in the building on account of a disability. [16-18] at 30.

of his arrest) was admitted into evidence, along with a stipulation that the DNA in the bloodstains belonged to Donelson. [16-18] at 94, 166.

Other evidence included Donelson's fingerprint on Speed's money clip found at the crime scene, and Donelson's palm print on a plastic bag that contained a towel, a pellet gun, a knife and suspenders—those four items were stained with Speed's blood. [16-17] at 229, 240, 310–23. Donelson's fingerprints were on a $CO_2$ cartridge found inside the pellet gun. [16-17] at 237. The plastic bag (containing the pellet gun, towel, knife, and suspenders) was found a few weeks after the murder in the penthouse area of the apartment building. [16-17] at 150–159.

### 1. The Videotaped Statement

In the videotaped statement from May 2000, Donelson said that he tried to collect a debt owed to him by Speed, and went into Speed's apartment with a pellet gun and a knife. [16-1] at 2. Donelson admitted that he repeatedly stabbed Speed, looked through Speed's pants, removed the money clip, and took $85 from Speed's wallet. *Id*. Donelson said he kicked the wallet under the refrigerator, and wrapped the gun, knife, and some suspenders in a towel and plastic bag. *Id*. He said he hid the items on the penthouse floor of the building. *Id*.

### 2. The Wallet

In January 2000, building staff cleaned Speed's apartment. [16-1] at 3; [16-17] at 120–123. While they were cleaning, Donelson came to the door and asked if they found Speed's wallet from under the refrigerator. [16-1] at 3. One of the cleaners testified that he did not believe it would have been possible for Donelson to

see the wallet from where he was standing. *Id*. The workers thought Donelson was joking, but they moved the refrigerator, and found Speed's wallet. *Id*. at 4; [16-17] at 308–09.[5]

Marvin Harrison was the Chief Engineer for the apartment building. [16-17] at 386. He was called by the defense at trial. *Id*. at 381–426. The defense attempted to elicit a prior statement made by Harrison to a defense investigator—a statement indicating that Harrison was present during the apartment cleaning but that Donelson never mentioned anything about the wallet under the refrigerator. [16-1] at 4. Harrison testified that he did not recall being in the apartment, and the trial court precluded the defense from eliciting the prior statement. *Id*.[6]

### 3. Donelson's Mother's Testimony

In addition to the allegations of physical abuse, Donelson testified that Detective Lewis told Donelson what to say in his confession. [16-1] at 3. Lewis denied coercing Donelson or telling him what to say. *Id*. Lewis added that he had previously assisted Donelson's mother when she was a victim of a crime, including bringing her food. *Id*. Donelson's mother did not testify at trial.[7]

---

[5] The building staff gave the wallet to Speed's sister in January 2000, and she turned it over to the police on June 1, 2000; Donelson's videotaped statement occurred on May 22, 2000. [16-17] at 308; [16-15] at 359.

[6] At trial, Harrison said that he told the defense investigator, "that I didn't find no wallet up underneath the refrigerator, something to that point." [16-17] at 415. The defense then asked Harrison, "Well, isn't it a fact that you told [the investigator] that no one told you about moving a refrigerator to find a wallet?" [16-17] at 415. The trial court sustained an objection on the grounds that the prior statement was not impeaching. [16-17] at 415–16. In the end, Harrison did not recall being present in the apartment when a wallet was found. [16-17] at 424.

[7] Donelson testified that "Detective Ron" [Lewis] helped Donelson's mother when she was a victim of a robbery, but denied that Lewis brought food to his mother. [16-18] at 104.

In closing argument, the prosecution claimed that Donelson's testimony about being beaten was not credible, in part, because Donelson never complained about his treatment to Lewis—a detective who knew Donelson's mother. [16-18] at 251.

At sentencing, Donelson's mother testified that had been robbed, and the detective who testified at trial was the detective who investigated that robbery. [16-18] at 394. But, she denied that the detective ever brought her any food. *Id.*

C.  **State Court Proceedings on Review**

Donelson appealed his conviction to the Illinois Appellate Court, and raised three issues: (1) that precluding him from eliciting Harrison's prior statement about the wallet under the refrigerator denied him a fair trial; (2) that his trial counsel provided ineffective assistance of counsel when he failed to call Donelson's mother as a witness at trial to contradict Lewis's testimony that he brought her food; and (3) that the prosecution's closing argument was improper and denied Donelson a fair trial. [16-2]. Donelson did not appeal the denial of his motion to suppress statements or raise any issues concerning his pre-charging detention. *See* [16-2]. The Illinois Appellate Court affirmed the conviction, and held that: (1) Donelson did not make an adequate offer of proof to justify the admission of Harrison's prior statement, and alternatively, that any error in excluding the statement was harmless beyond a reasonable doubt; (2) impeaching Lewis on whether he brought food to Donelson's mother was a collateral point and failing to call the mother did not satisfy either prong of *Strickland v. Washington*, 466 U.S. 668 (1984); and (3)

some of the prosecutor's closing arguments were based on reasonable inferences from the evidence, one misstatement was not so serious as to mislead the jury or to have been outcome determinative, and any cumulative effect of improper argument was either cured by limiting instructions or harmless beyond a reasonable doubt. [16-1]. The Supreme Court of Illinois denied leave to appeal. [16-6].

Donelson filed a pro se post-conviction petition in the state trial court. [16-7]. He raised two ineffective assistance of counsel claims; first, he re-presented the argument that his trial counsel should have called his mother as a witness, and second, he argued that his appellate counsel was ineffective for not raising additional issues on direct appeal (namely, the other issues raised in the post-conviction petition). *Id*. In addition to the ineffective assistance of counsel claims, Donelson argued that: (1) the trial court's findings from the suppression hearing (particularly its comments rejecting the blood-stained underwear as corroboration for Donelson's claim of abuse) were against the manifest weight of the evidence; (2) the exclusion of Marvin Harrison's prior statement about the wallet denied him a fair trial; (3) having law enforcement agents secure a waiver of Donelson's right to an attorney violated the Constitution, particularly his right to prompt presentment before a judicial officer; (4) 725 ILCS 5/109-1(a) (the statute providing for prompt presentment) was unconstitutional because it did not provide a remedy for a violation of the right to prompt presentment; (5) the trial court erred during voir dire by not following Illinois Supreme Court Rule 431(b). [16-7].

The state trial court characterized petitioner's claims slightly differently, *see* [16-14] at 200, but held that: (1) Donelson's constitutional challenge to 725 ILCS 5/109-1(a) was without merit; (2) the trial court found the confession to be voluntary so any challenge to the officers' extraction of a Miranda waiver would have been frivolous; (3) any claims concerning Rule 431(b) and DNA testing were devoid of facts and summarily dismissed; (4) the issues surrounding Marvin Harrison and Donelson's mother were raised and resolved on direct appeal, and therefore could not be asserted in a post-conviction petition; and, (5) citing *Strickland*, appellate counsel was not ineffective for failing to raise these issues on direct appeal because they were without merit (therefore, competent counsel need not have asserted them and petitioner was not prejudiced). [16-14] at 200–09.

Donelson appealed the denial of his post-conviction petition. [16-8]. Represented by counsel in this appeal, Donelson did not raise most of the issues presented in his post-conviction petition; instead he raised only one—that his trial attorney was ineffective for failing to call his mother to impeach Detective Lewis, and summary dismissal of the post-conviction petition was erroneous. *Id*. The Illinois Appellate Court affirmed the trial court, and held that the determination on direct appeal that the failure to call the mother at trial did not amount to ineffective assistance of counsel was *res judicata*, barring post-conviction review. [16-11] at 4. The Illinois Supreme Court denied leave to appeal. [16-13].

### D. Donelson's Federal Habeas Petition

Within one year of the Illinois Supreme Court's denial of his petition for leave to appeal, Donelson filed his federal habeas petition. His pro se petition lists eight issues for review, but they are best organized into seven claims:

1. The trial court's ruling preventing Donelson from eliciting Marvin Harrison's prior statement about the wallet violated due process, confrontation, and sixth amendment fair trial rights (Grounds 1 and 6);

2. Trial counsel rendered ineffective assistance of counsel by failing to call Donelson's mother to impeach Lewis (Ground 2);

3. The prosecutor's closing argument was improper and violated due process (Ground 3);

4. Appellate counsel's failure to raise (on direct appeal) the issues raised in Donelson's post-conviction petition amounted to ineffective assistance of counsel (Ground 4);

5. The trial court[8] violated due process when it disregarded the DNA testing on Donelson's underwear (Ground 5);

6. The police interrogation of Donelson violated his due process rights (Ground 7);

7. The Illinois statute on prompt presentment, 725 ILCS 5/109-1(a), is unconstitutional (Ground 8).

[8] at 5–7.

## II. Procedural Default

Respondent raises procedural default as to most of Donelson's claims. *See Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (procedural default is a

---

[8] The trial court referenced here is the court that denied Donelson's motion to suppress statements. That court said, "I don't know when the blood got on [the underwear]." [16-16] at 116. The jury heard the evidence of the DNA testing, confirming that Donelson's blood stains were on the underwear. [16-18] at 166. There was no forensic testimony establishing a time period when the blood stained the underwear.

9

waivable affirmative defense that the State is obligated to raise and preserve).[9] The claims related to appellate counsel's direct-appeal choices, the trial court's disregard of Donelson's DNA evidence, Donelson's interrogation,[10] and the constitutionality of the prompt-presentment statute, were raised in the pro se state post-conviction petition, but they were not pressed on appeal—either in his counseled appeal to the intermediate appellate court or his pro se petition to the Illinois Supreme Court. These claims have been defaulted. Donelson argues that the substance of his federal claims were fairly presented, [22] at 4, but he is mistaken. His appeal from the denial of his post-conviction petition quite clearly raised only one issue, not the host of claims he now presents, and the failure to appeal a claim raised in a post-conviction petition is a procedural default. *Byers*, 610 F.3d at 986.

Donelson did present a claim concerning the exclusion of Harrison's prior statement in one full round of state-court litigation. He raised the issue in his direct appeal through the Illinois Supreme Court. The claim he raised did not invoke the Confrontation Clause or general Sixth Amendment fair trial rights that he invokes now (Grounds 1 and 6 in his federal petition), but respondent does not assert procedural default on this basis. The warden raises a different argument for

---

[9] Donelson argues that the respondent's concession that he has exhausted his state-court remedies is inconsistent with its procedural default argument. [22] at 4. There is no inconsistency. Exhaustion is a separate, but related doctrine—if petitioner pursued state-court remedies and the state courts are no longer available to him, he has satisfied the exhaustion requirement, but the specific issues he presents to the federal court must have been presented to the state courts in a full round in order to defeat a procedural default defense. *See Perruquet*, 390 F.3d at 514.

[10] Donelson did not pursue any claims concerning his pretrial motion to suppress in his direct appeal.

10

procedural default—that the state court's decision rested on an independent and adequate state-law procedural ruling, thereby precluding federal review. [15] at 7; *see Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014) (a claim might be procedurally defaulted through a petitioner's initial failure to preserve it with an objection, even if the petitioner later does attempt to present it for review).

The Illinois Appellate Court held that Donelson waived his objection to the trial court's exclusion of Harrison's prior statement because Donelson failed to provide an adequate offer of proof. [16-1] at 7–9. This was a matter of Illinois evidence and procedure, and the court relied on the Illinois Supreme Court's decision in *People v. Andrews*, 146 Ill.2d 413, 421–22 (1992), to find waiver. At trial, Donelson's counsel asked Harrison, "isn't it a fact that you told [the investigator] that no one told you about moving a refrigerator to find a wallet?" [16-17] at 415. But the only offer of proof he made concerning the statement was a general statement that Harrison told the investigator that "certain things happened" during the cleaning of Speed's apartment. [16-1] at 7. The state court, applying its principles of waiver, held that this was not sufficient to preserve the objection. [16-1] at 9. This claim is procedurally defaulted and cannot be reviewed under § 2254.[11]

---

[11] The appellate court also said that "waiver aside," the exclusion of Harrison's prior statement was harmless beyond a reasonable doubt. [16-1] at 9. This alternative rationale for affirming the conviction does not provide a basis for federal review. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989). But even if Donelson had not procedurally defaulted his claim, a writ of habeas corpus is not warranted. The trial court's handling of the cross-examination of Harrison (and the effort to impeach him with a prior statement that was not technically inconsistent with his failure of recall on the witness stand), was not a structural error and was therefore subject harmless error review. The Illinois Appellate Court applied the standard of *Chapman v. California*, 386 U.S. 18, 24 (1967), (although it did not cite the case) when it concluded that any error was "harmless beyond a reasonable doubt." [16-1]

11

Donelson has not established cause and prejudice to excuse his default—he has not explained why his post-conviction appeal was limited to one issue. He has, however, asserted that it would be a miscarriage of justice if his claims were not reviewed. [22] at 5, 12. But has not cleared the "extremely high bar" set by the fundamental miscarriage of justice standard. *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013). The standard applies only in the rare case where the petitioner can prove that he is actually innocent of the crime with new, reliable evidence. *McDowell*, 737 F.3d at 483 (citing and quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). There is no new evidence here. Donelson continues to argue that his confession was the product of coercion and physical abuse, but the evidence of those claims was fully presented to the state courts at the hearing on his motion to suppress statements and at his trial. Federal habeas review is not available on Grounds 1 and 4 through 8 in Donelson's federal petition.

### III. Ineffective Assistance of Counsel

The state courts reviewed petitioner's claim that his trial counsel was constitutionally ineffective in failing to call Donelson's mother as a witness at trial. On direct review, applying *Strickland*, and noting that the choice to call witnesses is generally a tactical one that does not state an ineffective-assistance claim, the court

---

at 9. "If the state court reasonably applied the *Chapman* standard, 'the federal case is over and no collateral relief issues.'"*Kamlager v. Pollard*, 715 F.3d 1010, 1016 (7th Cir. 2013) (quoting *Johnson v. Acevedo*, 572 F.3d 398, 404 (7th Cir. 2009). The appellate court's application of harmless-error review was reasonable. It considered whether the potential impeachment of Harrison was outcome determinative in light of the strength of Donelson's confession and the physical evidence corroborating the confession. This was traditional, reasonable harmless-error review, and therefore, even if claims surrounding Harrison's testimony were not procedurally defaulted, the habeas petition on this claim is denied.

determined that counsel's performance was neither deficient nor prejudicial. [16-1] at 11–12.

Given that the state courts applied *Strickland* and considered the merits of this claim, Donelson faces a significant hurdle to obtain the writ. Under § 2254(d), a federal court can grant relief only if the state court's application of federal law was unreasonable, and that highly deferential review is "doubly so" when paired with *Strickland*. *Harrington*, 131 S.Ct. at 788.

The state court properly cited *Strickland* and described the applicable test. It then considered the fact that the mother's testimony was impeaching of only a portion of Detective Lewis's testimony (defendant himself testified at trial that Lewis did in fact assist his mother when she was robbed), and reviewed the overall strength of the prosecution's case. Since impeachment on a collateral matter (namely, whether Lewis helped Donelson's mother with groceries on some prior occasion) is generally not admissible, it was not deficient performance by trial counsel to forgo the mother's testimony. Moreover, the court's determination that impeaching Lewis on the groceries point would not have changed the outcome of the trial was also a reasonable application of the *Strickland* prejudice prong. Donelson disagrees with the court's assessment, arguing that Lewis's role as the "good cop" made his credibility central to the jury's verdict, but on doubly deferential review that debate is settled in favor of the state court decision. Donelson's petition is denied with respect to this claim (Ground 2).

13

## IV. Prosecutorial Misconduct in Closing Argument

The final claim (Ground 3) is that the prosecutor's closing argument denied Donelson a fair trial. Donelson presented a variant of this claim in a full round of state court review (his direct appeal). In his federal petition, Donelson argues that three comments by the prosecutor at trial were improper. First, the prosecution misstated the evidence and inflamed the passions of the jury when it argued that the victim was elderly, cancer-ridden, and Donelson was younger, bigger—the very person who was supposed to protect the victim. [8] at 14. Second, the prosecution's reference to Donelson's "confession" misstated the evidence because the confession was a false one. *Id*. Third, the comments that Donelson was in detention for a few days before discovering the blood in his underwear and that a kick in the groin would not cause bleeding misstated the evidence and were without any evidentiary support. [8] at 15. Donelson also argues that the cumulative effect of these comments deprived him of a fair trial. *Id*.[12]

The Illinois Appellate Court reviewed the claim of prosecutorial misconduct in closing argument and determined that the prosecutor's argument was based on reasonable inferences from the evidence with one exception—the claim that a kick

---

[12] In his direct appeal, Donelson argued that it was the prosecutor's comment that Donelson "controlled" the crime scene that inflamed the passions of the jury. [16-2] at 40–41. This is a slightly different portion of the closing argument than the one Donelson now complains of, and thus he did not give the state court an opportunity to evaluate the precise argument he now presents. He also never argued in his direct appeal that the prosecutor's reference to a "confession" was a misstatement of the evidence. *See* [16-2]. These arguments have been defaulted and can be dismissed on that basis. Nevertheless, the respondent addresses the merits and the Illinois Appellate Court considered a cumulative error argument, reviewing the closing argument in the context of the entire trial; therefore, I will consider the merits (under the § 2254(d) standard of review) as well.

14

to the groin would not cause bleeding was not supported by evidence or common sense. [16-1] at 12–17.[13] The court determined that the trial court's limiting instruction (advising the jury that arguments are not evidence) and the relatively minor nature of the comments ensured that Donelson received a fair trial. [16-1] at 17–18.

The court cited Illinois state court decisions on the scope of proper closing argument, the curative nature of limiting instructions, and the harmless beyond a reasonable doubt standard of review. [16-1] at 12–18. "[A] state court decision that does not cite federal precedent is still consistent with federal law so long as neither the reasoning nor the result of the state court decision contradicts the Supreme Court's decisions." *Richardson*, 745 F.3d at 276 (citing *Early v. Packer*, 537 U.S. 3, 8 (2002)).

The Illinois Appellate Court decision is entirely consistent with U.S. Supreme Court precedent. As described in *Darden v. Wainwright*, 477 U.S. 168, 181–182 (1986), improper comments are to be considered in light of limiting instructions, the weight of the evidence, and other factors. Federal courts look to five factors to determine whether comments deprived defendant of fair trial: (1) the nature and seriousness of the misconduct; (2) the extent to which the comments were invited by

---

[13] The court held that the evidence that Donelson was a member of tenant patrol supported an inference that he had access to the building, was in a position to protect tenants like Speed, and therefore, "controlled" the scene. *See* [16-1] at 17. The trial evidence was that Donelson was in custody for two days; therefore the prosecutor's comment about Donelson's time in detention was supported by the evidence. [16-1] at 15. I also note that the prosecutor's reference to Donelson's "confession" did not misstate the evidence. The videotaped statement and Donelson's oral statement to Lewis were in evidence, as was Donelson's testimony that the confession was false. The prosecutor was free to comment that Donelson confessed without depriving Donelson of a fair trial.

15

the defense; (3) the extent to which any prejudice was ameliorated by the court's instruction to the jury; (4) the defense's opportunity to counter any prejudice; and (5) the weight of the evidence supporting the conviction. *United States v. Adkins*, 743 F.3d 176, 187 (7th Cir. 2014) (citations and quotations omitted). The Illinois Appellate Court effectively followed the federal test—it considered the limiting instructions, the weight of the evidence, and the harmlessness of the comments. Its conclusion that the comments did not prejudice Donelson or materially affect the outcome was a reasonable one. In a trial where a defendant's videotaped statement admitting to murder was corroborated by physical evidence, it is not unreasonable to conclude that a few passing comments in closing argument had no impact on the verdict.[14]

Donelson's petition with respect to prosecutorial misconduct (Ground 3) is denied.

## V.   Evidentiary Hearing and Certificate of Appealability

Donelson requests an evidentiary hearing, [22] at 11, but does not establish any factual dispute that, if resolved in his favor, would entitle him habeas relief. As explained above, the procedural default of his claims as well as the state court's reasonable application of federal law are established by the existing record. If the record precludes federal habeas relief, the district court is not required to hold an

---

[14] Donelson argues that jury's initial deadlock demonstrates that this was a close trial, and that the prosecutor's argument should not be lightly dismissed as harmless. In reviewing the claim at this stage, the question is not whether the trial was close, but whether the state court was unreasonable in applying federal law. Donelson disagrees with the outcome of the state court's review but does not establish any clear mistake by the court. A writ of habeas corpus is not available under these circumstances.

evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Bland v. Hardy*, 672 F.3d 445, 450 (7th Cir. 2012). The request for an evidentiary hearing is denied.

Donelson cannot appeal unless he receives a certificate of appealability. 28 U.S.C. § 2253(c). A certificate may issue only if Donelson has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "The prisoner need not show he is likely to prevail, but he must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quotation omitted). Donelson's petition does not involve claims subject to reasonable debate—the claims were defaulted or resolved by the state courts applying settled federal law, and this outcome is readily apparent from the record. I decline to issue a certificate of appealability.

## VI. Conclusion

Donelson's petition for a writ of habeas corpus is denied, and no certificate of appealability shall issue. The clerk shall enter judgment in favor of the respondent.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 12/8/14